UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                                    Plaintiff,

                                                        CRIMINAL CASE NO. 05-50009

v.

JAJUAN MONDRESSE FORDHAM,                               HONORABLE PAUL V. GADOLA
                                                        U.S. DISTRICT COURT
                                    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION TO SUPPRESS

On February 9, 2005, Defendant Jajuan Mondresses Fordham was charged with Possession with Intent to Distribute 5 Grams or More of Cocaine Base, 21 U.S.C. § 841(a)(1). Before the Court is Defendant's motion to suppress evidence, filed on June 28, 2005. The Court held a hearing on the matter on September 7, 2005. For the following reasons, the Court will grant the motion.

I.      **Background**

On November 12, 2005, at approximately 1:50 in the morning, Officers Fowlkes and Surface, both officers with the Flint Police Department, observed a 1986 red Chevrolet Monte Carlo, driven by Defendant, approach, and subsequently stop at, the four-way intersection of Parkway and Fulton at which the officers were themselves waiting. The officers were stopped at the intersection facing eastbound, while Defendant was facing northbound. Although the officers had arrived at the intersection first, they waited for Defendant to proceed through the intersection. When he did not, Officer Fowlkes illuminated Defendant's driver's side window with his spotlight. At the hearing, Officer Fowlkes testified that upon illuminating the driver's side window, he noticed that the

window had heavy tinting and that he could barely see the driver of the vehicle. Officer Fowlkes stated that the tinting appeared to be darker than what would have been supplied by the manufacturer. Based upon this, the officers determined that Defendant's window tinting was in violation of applicable state and local regulations.

Defendant's vehicle remained at the intersection, apparently waiting for the officers who had the right of way. After more than a minute had elapsed, Officer Fowkles motioned with his spotlight for Defendant to proceed through the intersection. Defendant then waited approximately thirty seconds before making a left turn towards the officers and driving past them, westbound on Parkway. The officers turned their vehicle around in the intersection to follow Defendant. By the time the officers had completed the turn, Defendant had begun to pull into the driveway of a house which was a few houses from the intersection. At that time, the officers activated their overhead lights and affected a traffic stop.

When the officers pulled in behind Defendant, Defendant exited his vehicle and asked the officers what was going on. Officer Fowlkes asked Defendant if he had a driver's license, registration, and proof of insurance. Defendant stated that he did not have a license. The officer's therefore placed Defendant under arrest for driving without a license.

Officer Fowlkes frisked Defendant for weapons but found nothing. While Officer Fowlkes was speaking with Defendant, Officer Surface found a live round of ammunition underneath the driver's seat and a handgun in the front passenger compartment of Defendant's vehicle. Officer Surface notified Officer Fowlkes of this discovery and escorted Defendant to the police cruiser. At the police cruiser, Defendant asked Officer Surface to pull up his (defendant's) pants because they

2

were oversized and falling off his hips.  When Officer Surface did so, two individually wrapped rocks of crack cocaine fell from Defendant's pant leg.  Another search of Defendant's person revealed money, a cell phone, and an empty, clear plastic baggy.

## II.    Legal Standard

The Fourth Amendment prohibits only unreasonable searches or seizures.  A traffic stop is a seizure under the Fourth Amendment.  *United States v. Freeman*, 209 F.3d 464, 466 (6th Cir. 2000).   If a search is conducted without a warrant, as it was here, it is considered *per se* unreasonable, unless it fits into one of the established exceptions.  *See Katz v. United States*, 389 U.S. 347 (1947).  The Government has the burden of proving the applicability of a Fourth Amendment warrant exception to the search or seizure in question.  *See United States v. Haynes*, 301 F.3d 669, 677 (6th Cir. 2002) ("The Government has the burden of proof to justify a warrantless search.").

For a warrantless traffic stop based on a violation of a civil traffic infraction to be reasonable, the police officer must have probable cause to believe that a violation has occurred.  *Gaddis v. Redford Twp.*, 364 F.3d 763, 771 (6th Cir. 2004); *Whren v. United States*, 517 U.S. 806, 810 (1996).  So long as an officer has probable cause to believe that a traffic violation has occurred, the resulting stop is not a violation of the Fourth Amendment even if it is pretextual; the officer's motive is irrelevant.  *Gaddis*, 364 F.3d at 771; *United States v. Ferguson*, 8 F.3d 385, 391 (6th Cir. 1993).  The legitimacy of a traffic stop is judged objectively "by undertaking 'an objective assessment of an officer's actions in light of the facts and circumstances then known to him."  *Ferguson*, 8 F.3d at 388 (quoting *Scott v. United States*, 436 U.S. 128, 137 (1978)).

If the traffic stop was unreasonable, and therefore illegal, then evidence seized as a result of the stop, and any subsequent search, must be suppressed under the 'fruits of the poisonous tree doctrine.'" *Wong Sun v. United States*, 371 U.S. 471, 484 (1963). *See also Northrop v. Trippett*, 265 F.3d 372, 377-78 (6th Cir. 2001); *Segura v. United States*, 468 U.S. 796, 804 (1984). The fruit of the poisonous tree doctrine "bars evidence which, though not obtained in the illegal search, was derived from information or items obtained in the search." *United States v. Leake*, 95 F.3d 409, 411 (6th Cir. 1996) (citing *Murray v. United States*, 487 U.S. 533, 536-37 (1988) (doctrine "prohibits the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary [illegally obtained] evidence"). "The doctrine ensures that the government cannot achieve indirectly what it is forbidden to accomplish directly." *Leake*, 95 F.3d at 411.

## III.   Analysis

The officers' reason for stopping Defendant was that he was driving a vehicle with darkly tinted driver and front passenger side windows, in violation of M.C.L. § 257.709, which provides:

(1) A person shall not drive a motor vehicle with any of the following:

> (a) A sign, poster, nontransparent material, window application, reflective film, or nonreflective film upon or in the front windshield, the side windows immediately adjacent to the driver or front passenger, or the sidewings adjacent to and forward of the driver or front passenger, except that a tinted film may be used along the top edge of the windshield and the side windows or sidewings immediately adjacent to the driver or front passenger if the material does not extend more than 4 inches from the top of the windshield, or lower than the shade band, whichever is closer to the top of the windshield.

M.C.L. § 257.709(1)(a).

At the hearing, Officer Fowlkes testified that when he examined Defendant's vehicle at the

4

time of the arrest, he noticed that all of Defendant's windows except the windshield were heavily, or darkly, tinted.  He also testified that the tint on the driver's side window was accomplished through the application of a film applied to the window, typical of the type applied after market.

Defendant produced photographs of the vehicle taken by a  private investigator employed by Defendant's counsel.  The photographs were taken approximately seven and a half months after the incident which showed Defendant's vehicle to have a severely tinted rear window and rear passenger windows.[1]  The photographs also show, however, that the driver's side and front passenger windows were not severely tinted, but rather lightly tinted.  In the photographs, a late model Chevy Envoy was placed next to Defendant's vehicle for comparison.  Def. Ex. 1, 4. Although the Chevy Envoy's front windows are tinted to some degree, they are not in violation of M.C.L. § 257.709 for reasons which will be explained below.  The photographs plainly show that the front windows of Defendant's vehicle are no more tinted then those of the Chevy Envoy. Defendant's girlfriend testified at the hearing that she retrieved Defendant's vehicle from the impound lot and that nothing had been done to change the appearance of the vehicle between the time she obtained it and the time the photographs were taken.  Defendant also filed an affidavit of the private investigator who avers that he spoke with the previous owner of the vehicle and the owner stated that, at the time he owned it, the windows were as they appear in the photographs.

Based upon this evidence, the Court concludes that the officers did not have probable cause to believe that Defendant's windows violated M.C.L. § 257.709, and thus the stop of Defendant's

---

[1] The Government does not contend that the tinting on Defendant's rear windows was in violation of the statute, nor could it.  *See* M.C.L. § 257.709(3)(a).

5

vehicle was in violation of the Fourth Amendment.

M.C.L. § 257.709 prohibits tinting that is a material, application, or film.  M.C.L. § 257.709(1)(a) refers to "[a] sign, poster, nontransparent material, window application, reflective film, or nonreflective film."  Tinting that is within the window itself, rather than a separate material applied to the windows, is not prohibited  by the statute.  This is the reason why the late model Chevy Envoy's front windows are not in violation of M.C.L. § 257.709, because the tinting is accomplished through a coloration of the glass rather than by an application of a material or film. This does not mean that any amount of tinting in the front windows is permissible so long as it is accomplished by a coloration of the glass.  Such glass is regulated by National Transportation Safety Regulation 49 C.F.R. § 571.205, which effectively limits tinting of the glass itself to 30 percent.

Defendant's front windows, however, were tinted through the application of a film and such tinting is in violation of M.C.L. § 257.709.  The statute makes no distinction between lightly tinted windows and darkly tinted windows; all window tinting that is achieved through the application of a film is illegal.  Nevertheless, Defendant's front windows were no more tinted than the windows of a vehicle with tinting which is not in violation of the statute, such as the late model Chevy Envoy in the photographs.  Because there is virtually no distinction in appearance between the illegal tinting applied to Defendant's front windows and the legal tinting achieved through a coloration of the windows, the officers could not have determined that Defendant's windows were a violation of M.C.L. § 257.709 when Officer Fowlkes shone his stoplight on Defendant's vehicle.

Contrarily, the Government maintains that Defendant's front windows were so heavily tinted that one could barely see the driver of the vehicle, as was testified to by Officer Fowlkes, and that

6

the condition of the vehicle at the time the photographs were taken is not the same condition that the vehicle was in at the time of the arrest.  The Government points to the testimony of the private investigator who stated that the type of film typically used to tint windows is capable of being removed from the window with a razor blade.  Tr. at 42-43.  Yet, the Court finds the evidence in favor of Defendant more credible.  Moreover, the private investigator testified that, when he took the pictures of Defendant's vehicle, the vehicle's front windows were tinted to an identical degree as those of the Chevy Envoy, Tr. at 41, and that, due to the vehicle's age, he surmised that the tint on Defendant's front windows was accomplished through a film that was applied after market, Tr. at 42.  The Court finds it unlikely that, to manufacture evidence that the stop of Defendant's vehicle was invalid, Defendant would have had illegal tinting removed from his vehicle's windows, only to have more illegal tinting applied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Defendant's motion to suppress [docket entry 17] is **GRANTED**.

**SO ORDERED.**


Dated:  November 2, 2005                                s/Paul V. Gadola
                                                        HONORABLE PAUL V. GADOLA
                                                        UNITED STATES DISTRICT JUDGE

Certificate of Service

I hereby certify that on  November 2, 2005  , I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:
_____James C. Mitchell; Kenneth Sasse_____, and I hereby certify that I have mailed by United States Postal Service the paper to the following non-ECF participants: _____.


s/Ruth A. Brissaud_____
Ruth A. Brissaud, Case Manager
(810) 341-7845